### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**RAYMOND FORMAN**                                      **CIVIL ACTION**

**versus**                                             **NO. 07-4200**

**BURL CAIN, WARDEN**                                  **SECTION: "A" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Raymond Forman, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On January 7, 1999, he was convicted of aggravated rape in violation of La.Rev.Stat.Ann. § 14:42, and he was subsequently sentenced to a term of life imprisonment without benefit of probation, parole, or suspension of sentence.[2]  On December 27, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied a related writ application on January 4, 2002.[4]

Petitioner allegedly filed with the state district court a post-conviction application on or about December 31, 2002, as well as a supplement on or about July 22, 2003.  When he received no ruling on that application, he filed with the Louisiana Fourth Circuit Court of Appeal an application for a writ of mandamus which was construed as an application for a supervisory writ. The Court of Appeal denied the application, stating that it had reviewed petitioner's post-conviction

---

[2] State Rec., Vol. I of III, transcript of January 7 and 21, 1999, pp. 86 and 94; State Rec., Vol. I of III, jury verdict form.

[3] State v. Forman, No. 99-KA-2172 (La. App. 4th Cir. Dec. 27, 2000) (unpublished); State Rec., Vol. I of III.

[4] State v. Forman, 805 So.2d 1194 (La. 2002) (No. 2001-KO-0469); State Rec., Vol. II of III.

claims and found that he had "failed to demonstrate that he is entitled relief."[5]   The Louisiana

Supreme Court then denied a related writ application on June 22, 2007.[6]

On July 10, 2007, petitioner filed this federal application for *habeas corpus* relief.

Petitioner's statement of his claims is rambling, disorganized, disjointed, and often conclusory.

Attempting to decipher the claims asserted in the application and supporting memorandum to the

best of its ability, the Court finds that the application can fairly be construed as asserting the

following claims:

    1.    Petitioner received ineffective assistance of counsel;

    2.    The trial judge should have quashed the indictment or granted

        a continuance based on the prosecution's failure to file a bill

        of particulars in a timely manner; and

---

[5]   State v. Forman, No. 2006-K-0681 (La. App. 4th Cir. Aug. 14, 2006) (unpublished); State Rec., Vol. II of III.  In this proceeding, petitioner argues that the Court of Appeal should not have ruled on the merits of the claims but instead should have remanded the matter to the state district court. It is not uncommon for the Louisiana Fourth Circuit Court of Appeal, in the interest of judicial economy, simply to consider the underlying merits of post-conviction claims in instances where the Orleans Parish Criminal District Court failed to issue a ruling. See, e.g., Smith v. Cain, Civil Action No. 07-1504, 2007 WL 2461663, at *1 (E.D. La. Aug. 23, 2007).  Petitioner has presented nothing in support of his contention that the Court of Appeal is without authority to take such action. Further, whether such an action was appropriate is a determination better left to the state courts interpreting the state's own rules, and the Louisiana Supreme Court rejected petitioner's writ application challenging the Court of Appeal's action.  State ex rel. Forman v. State, 959 So.2d 488 (La. 2002) (No. 2006-KH-2402); State Rec., Vol. III of III.  In any event, even if the Court of Appeal's action in the post-conviction proceedings was improper, that would not affect the validity of petitioner's underlying conviction or sentence and, therefore, would not warrant federal *habeas corpus* relief.  See Morris v. Cain, 186 F.3d 581, 585 n.6 (5th Cir. 1999); Nichols v. State, 69 F.3d 1255, 1275 (5th Cir. 1995).

[6]   State ex rel. Forman v. State, 959 So.2d 488 (La. 2007) (No. 2006-KH-2402); State Rec., Vol. III of III.

3.      There was insufficient evidence to support petitioner's

conviction.[7]

The state concedes that petitioner's federal application is timely[8] and does not contend that he failed to exhaust his state court remedies. Accordingly, the Court will address his claims on the merits.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

---

[7] Petitioner also includes in his application a conclusory statement that the arrest warrant in the instant case was "obtained illegally"; however, that allegation is not addressed in his supporting memorandum. It is unclear to what extent, if any, petitioner intended the passing comment to be a separate claim for relief. However, even if he intended to assert such a claim, he has not shown that the arrest warrant was in fact invalid. Moreover, in any event, "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor a defense to a valid conviction." <u>United States v. Crews</u>, 445 U.S. 463, 474 (1980); <u>see also</u> <u>Workman v. Cardwell</u>, 471 F.2d 909, 910-11 (6th Cir. 1973) ("[T]he validity of the arrest warrant – absent any claim that Petitioner was thereby deprived of a fair trial – does not rise to the level of a constitutional claim in a federal habeas corpus proceeding.").

[8] Rec. Doc. 6, p. 1.

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> New Orleans Police Detective Genario Sanders, Commander of the Child Abuse Unit, conducted a follow-up investigation to the rape of L.R. [FN]  He identified the rape kit, clothing taken from the victim, and photographs of the shotgun-double residence where she

and the defendant resided.  Det. Sanders said he did not interview the victim until August 11, 1997, but that Det. Larry Smith had begun the investigation on September 15, 1994.

> [FN]  Due to the nature of the offense and the age of the victim, she will be referred to by her initials, L.R., and her mother, will be referred to as Ms. L.R.

Ms. L.R., the victim's mother, testified that on September 15, 1994, she resided at 1820 North Claiborne Avenue.  She and the defendant "went together," he lived with her "off and on," and he was the victim's father.  That morning, L.R. got into bed with her and the defendant.  Ms. L.R. later got up to go to the bathroom, and saw L.R. drawing bath water.  Her daughter stayed home that day because it was raining heavily and she did not want to go to school.  Ms. L.R. left the residence at approximately 9:00 or 9:30 a.m. to take her nephew to the doctor.  She returned sometime after 12:00 p.m., and L.R. informed her that the defendant had raped her.  The victim then ran outside and went to her aunt's residence.  Ms. L.R. and her sister subsequently took L.R. to Charity Hospital, where she was examined.  L.R. also told her aunt that the defendant had given her fifteen dollars, and told her not to tell anyone.  She gave Ms. L.R. ten dollars, saying she had spent five dollars at the grocery store.  Ms. L.R. stated on cross examination that when she returned to her residence around noon, L.R. and the defendant were there, as were a friend and her husband, and her stepson.  L.R. did not tell her about the rape until everyone had left, including the defendant, who went to work.

L.R., the victim, who was sixteen at the time of trial, testified that she did not go to school on September 15, 1994 because she was going to the doctor.  She did say it was raining that day.  That morning she was in bed with her mother and father; she said she always slept with her mother.  She said that after her brother went to school, the defendant told her to go to her room.  He subsequently came into her room and ordered her to go into her brother's room, the back room of the residence.  She followed him into the room, and lay down on the bed.  The defendant left the room, and returned with some Vaseline.  She asked him what he was going to do, and he said she would see.  He pulled her shorts and drawers down, put Vaseline on his penis and on her vagina.  He had Vaseline on his fingers, and put his fingers into her vagina; he then inserted his penis.  She reminded him that he had said he would never do anything to hurt his

- 6 -

"little girl," at which time he told her to shut up, and put his hands around her neck and began choking her. She answered "No" when the prosecutor asked if she could breathe or was able to scream out to anyone. Only her mother was home. Afterward, the defendant had intercourse with her again on the other bed in the room. During this episode she told the defendant that it hurt, but he told her she had to get used to it. She said her mother knocked on the door, and the defendant stopped and pulled his clothes up. L.R. said she pulled her clothes up and walked out of the room, and shortly thereafter took a bath. Her mother came into the bathroom while she was taking a bath, as did the defendant.

Later in the morning, her mother and her aunt took her cousin to the doctor. She wanted to go with them, but the defendant told her she could not. L.R. subsequently started to watch television, and began crying. The defendant called her into his bedroom, commented about her crying, and said he was going to "fix" her. He then had intercourse with her again. The defendant stopped when he heard a car door slam, and looked out to see L.R.'s godparents. The defendant later gave her fifteen dollars, and told her not to tell anyone, assuring her that he never meant to hurt her. L.R. claimed she gave all of the money to her mother, but later got five dollars back and went to the store with her older brother, Mike, who was hungry, and one of her friends. She started crying on the way back from the store, but would not tell them when they asked what was wrong, because she felt ashamed. After she came home she was on the sofa crying. When her mother asked what was wrong, she said "nothing." She wrote on a piece of paper that her father had raped her, but folded it up. She followed her mother into the kitchen, asked her if she knew why the defendant had given money to her, and then told her mother that "he had sex with me." She ran out of the residence to her aunt's home next door, past her little brother, her cousin, and her aunt, while her mother followed, telling the others to catch her. Her aunt asked what was wrong, and L.R. just gave her the note she had written earlier, without saying anything. Her mother and her aunt then took her to Charity Hospital for an examination. She said her father never came back to visit her after that day. L.R. said she was hospitalized at Eastlake Hospital for two months after this incident. L.R. stated on cross examination that her mother left before 12:00 p.m. to take her cousin to the doctor, and returned between 2:30 and 2:45 p.m.

Dr. Victor Tucker was qualified by stipulation as an expert in the field of sexual assault examinations. He examined the victim on

September 15, 1994, and went through his report for the jury.  The report reflected that the examination was performed at 11:00 p.m., and the victim gave a history of having been vaginally raped three times by her father, who used Vaseline.  The first attack occurred at 11:00 a.m., the last at 1:00 p.m.  The report noted that the victim said she was slapped across the mouth with an open hand, and choked with two hands.  The physical examination of the victim revealed trauma to the hymen, the vaginal wall, and the cervix.  The hymen was torn, and had some fresh bruising, indicating an injury within the past twenty-four hours.  There was a one centimeter long laceration to the left lateral wall of the vagina, which the doctor confirmed would be a significant finding in a twelve-year old child.  The cervix had a small hematoma.  Dr. Tucker said the injuries could have occurred from trauma by sexual penetration, and were consistent with the history given by the victim.

Dr. Tucker stated on cross examination that the bruising of the cervix could have been caused by something other than intercourse, and that there was nothing in his examination that would confirm whether there had actually been intercourse.  Dr. Tucker noted, however, that he simply collects specimens from the victim for later analysis by the coroner's office.  Dr. Tucker stated on redirect examination that there could be several reasons why sperm or seminal fluid was not present, such as if the male failed to ejaculate, or the victim washed or cleansed herself.

It was stipulated that if a criminalist were called as a witness, he would testify that no spermatozoa or seminal fluid was found on the victim's clothes or on vaginal smears and swabs taken from her.

Ms. L.R. was called as a witness by the defense, and testified that she never saw the defendant at her residence after September 15, 1994.  The defendant stated for the record, in chambers, that he did not wish to testify.[9]

_____

[9] State v. Forman, No. 99-KA-2172, at pp. 1-5 (La. App. 4th Cir. Dec. 27, 2000) (unpublished); State Rec., Vol. I of III.

Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  In the state post-conviction proceedings, the Louisiana Fourth Circuit Court of Appeal found that petitioner failed to demonstrate that he is entitled relief based on this claim.[10]

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide

---

[10]   State v. Forman, No. 2006-K-0681 (La. App. 4th Cir. Aug. 14, 2006) (unpublished); State Rec., Vol. II of III.  The Louisiana Supreme Court denied the related writ application without assigning reasons.  State *ex rel.* Forman v. State, 959 So.2d 488 (La. 2007) (No. 2006-KH-2402); State Rec., Vol. III of III.

range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986);

Matthison v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Therefore, this Court must defer to the state court's decision rejecting such a claim unless petitioner shows that the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).

- 10 -

Petitioner claims that his counsel was ineffective in numerous respects.  However, for the following reasons, it is evident that all of petitioner's contentions are without merit.

Petitioner first contends that his counsel was ineffective in failing to subpoena witnesses.  However, it is clear that "complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  Therefore, to show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In the instant case, petitioner has not even identified the witnesses he believes should have been called, much less made the requisite showing that the witnesses would in fact have testified and that their testimony would have been favorable to the defense.  Accordingly, he has utterly failed to meet his burden of proof with respect to this claim, and the claim therefore fails.

Petitioner next contends that his counsel was ineffective "for not keeping her cleint [sic] informed on important development of the case" and in keeping "important papers" from him.  Specifically, petitioner claims that he was not given a copy of the Motion for Bill of Particulars or an order of release.  Even if petitioner had submitted any evidence in support of this claim to prove that such documents were in fact withheld from him, *which he has not,* and even if the Court were to assume that counsel performed deficiently in this respect, petitioner has not shown that there is a reasonable probability that, but for counsel's actions, the result of the proceeding would have been different.  Therefore, his claim necessarily fails because he has shown no resulting prejudice.

Petitioner next contends that his counsel was ineffective in not preparing a defense. However, petitioner identifies no potentially viable defense available that defense counsel eschewed. Therefore, petitioner has fallen woefully short of meeting his burden to establish that his counsel performed deficiently.  Sometimes, as is evidently the case here, when representing a seemingly guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt. Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that she performed deficiently.

Petitioner next contends that his counsel was ineffective in allowing a relative of the victim to sit on the petit jury.  However, petitioner, who bears the burden of proof in this proceeding, has presented no evidence whatsoever in support of his allegation that the juror, Leslie Dedmond, is in fact a relative of the victim or that he made counsel aware of that fact.  Therefore, his claim necessarily fails for that reason alone.[11]

---

[11]  Moreover, in any event, this Court notes that jury selection is "more an art than a science." Romero v. Lynaugh, 884 F.2d 871, 878 (5th Cir. 1989).  Taking that into account, the United States Fifth Circuit Court of Appeals has observed, "The selection of a jury is inevitably a call upon experience and intuition.  The trial lawyer must draw upon his own insights and empathetic abilities. Written records give us only shadows for measuring the quality of such efforts."  Id.  The Fifth Circuit has further held:

> [An] attorney's actions during voir dire are considered to be a matter of trial strategy. A decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.

Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995) (quotation marks omitted).
In the instant case, even if the Court were to assume that counsel was in fact told of a potential bias and performed deficiently in failing to investigate that information and challenge the juror, petitioner's ineffective assistance of counsel claim would still fail because he cannot show that

Petitioner next contends that his counsel was ineffective in failing to perform an adequate investigation. However, a petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* for his allegations as to what further investigation would have revealed. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998). In the instant case, petitioner has not even alleged what exculpatory information might possibly have been revealed by further investigation, much less provided factual support for those allegations. Accordingly, this claim also fails.[12]

---

any prejudice resulted. To establish prejudice, petitioner must show that, but for his attorney's failure to challenge the juror, the results of the proceeding would have been different. See Wilson v. Dretke, No. 3:01-CV-1082-H, 2003 WL 22976625, at *4 (N.D. Tex. Dec. 10, 2003) (Ramirez, M.J.), adopted, 2004 WL 57165 (N.D. Tex. Jan. 6, 2004) (Sanders, J.), appeal dismissed, 111 Fed. App'x 767 (5th Cir. 2004). Where, as in the instant case, the evidence of a petitioner's guilt is overwhelming, that showing simply cannot be made with respect to a claim challenging counsel's actions during *voir dire*. See, e.g., Dickson v. Thompson, No. 99-36233, 2000 WL 1593414 (9th Cir. Sept. 13, 2000); Horne v. Secretary, Florida Department of Corrections, No. 6:06-cv-0317-Orl-31JGG, 2007 WL 779129, at *5 (M.D. Fla. Mar. 8, 2007); Baldwin v. Johnson, No. 1:02CV357 DD, 2006 WL 2468779, at *14 (M.D. Miss. Aug. 23, 2006); Parker v. Turpin, 60 F. Supp.2d 1332, 1364 (N.D. Ga. 1999), aff'd, 244 F.3d 831 (11th Cir. 2001).

[12]   At one point, petitioner seems to suggest that further investigation would have revealed that, on Saturday, August 23, 1997, a state judge had ordered that petitioner be released from incarceration pursuant to La.C.Cr.P. art. 701 because the District Attorney had not secured an indictment. If that is indeed petitioner's contention, then it is meritless for at least two reasons. First, article 701 simply allows release from custody pending trial, and a violation of the article in no way bars prosecution. See State v. Outley, 629 So.2d 1243, 1249 (La. App. 2nd Cir. 1993). Second, the order of August 23 was issued in error because an indictment was secured and filed into court on August 21, 1997. Petitioner's indictment rendered any article 701 violation moot. See State v. Varnall, 539 So.2d 45, 46 (La. 1989).

Petitioner next contends that his counsel was ineffective in failing to give a closing argument. However, the transcript reflects that defense counsel in fact gave a closing argument.[13] Accordingly, petitioner's claim is incorrect as a matter or fact and, therefore, necessarily fails.

Lastly, petitioner contends that his counsel was ineffective in failing to object to the prosecution's opening statement and closing argument. As an initial matter, the Court notes that petitioner has failed to prove that the prosecutor in fact made any improper comments. Nevertheless, even if such comments were made, petitioner has not met his burden to establish that *habeas* relief is warranted for the following reasons.

Petitioner is challenging a decision which is inherently one of trial strategy, and the United States Supreme Court has made clear that federal *habeas* courts are not to second-guess such decisions through the distorting lens of hindsight but instead are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance. <u>Strickland</u>, 466 U.S. at 689. It has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

<u>Rios-Delgado v. United States</u>, 117 F.Supp.2d 581, 589 (W.D. Tex. 2000); <u>see also</u> <u>Burnett v. Collins</u>, 982 F.2d 922, 930 (5th Cir. 1993). Decisions regarding whether to object to comments made in opening statements or closing arguments clearly falls within that general rule. <u>See, e.g.</u>, <u>Drew v. Collins</u>, 964 F.2d 411, 423 (5th Cir. 1992) ("[a] decision not to object to a closing argument is a

---

[13]  State Rec., Vol. I of III, transcript of January 7 and 21, 1999, p. 85.

matter of trial strategy").  Moreover, even where an objection might have some small chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir. 1992).  Such deference to counsel's strategic choices is particularly appropriate here because, if counsel had objected, he would have invited the jurors to focus their attention on the prosecutor's opening statement and closing argument, which jurors may not consider as evidence in any event, and perhaps thereby inflated their importance in the jurors' minds.  Counsel can hardly been deemed to have performed ineffectively in choosing to avoid that unnecessary risk.

Further, even if counsel's choices in this regard *could* be considered deficient performance, petitioner clearly has not shown prejudice.  In light of the overwhelming evidence in this case, petitioner has not shown that there is a reasonable probability that if counsel had only objected to the comments, the result of the proceeding would have been different.

Petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects those claims.

<u>Delayed Filing of the Bill of Particulars</u>

Petitioner argues that, based on the prosecution's failure to file a bill of particulars in a timely manner, the trial court should have quashed the indictment or, alternatively, granted defense counsel's request for a continuance.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

Defense counsel filed a motion for bill of particulars on September 23, 1998, requesting, among other information, the specific statute and subpart under which defendant was being prosecuted. The State did not file the bill of particulars until January 6, 1999, the day before trial, informing the defendant that it was proceeding under La. R.S. 14:42(A)(2) – vaginal sexual intercourse deemed to be without the lawful consent of the victim because the victim was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. On the morning of trial, defense counsel filed a motion to quash, complaining that she was not prepared to defend against that theory, suggesting that because the bill of indictment noted the victim's date of birth, she had been prepared to defend a prosecution on the theory that the victim was under the age of twelve, as proscribed by La. R.S. 14:42(A)(4).

La. C.Cr.P. art. 532(4) provides that a motion to quash may be based on the ground that the State failed to furnish a sufficient bill of particulars when ordered to do so by the court. The order at the bottom of the defendant's motion for bill of particulars was signed by the court on September 23, 1998. However, defense counsel never complained that the State had failed to furnish the requested bill of particulars, and the State filed it on the day before trial. When defense counsel filed an oral motion to quash on the morning of trial, the State had already furnished the defendant with a sufficient bill of particulars. Therefore, that ground was not available, and the trial court properly denied the motion to quash.

The defendant's alternative argument is that he should have been granted a continuance to prepare a defense. A motion for continuance shall be in writing and shall be filed at least seven days prior to the commencement of trial. La. C.Cr.P. art. 707. However, where occurrences that allegedly make the continuance necessary arise unexpectedly, and the defendant has no opportunity to prepare a written motion, an oral motion may be sufficient. State v. Sam, 99-0300, p. 16 (La. App. 4 Cir. 4/19/00), 761 So.2d 72, 82. A timely motion for continuance may be granted, in the discretion of the trial court, if there is good ground therefore. La. C.Cr.P. art. 712. A trial court's decision to deny or grant a continuance is within its broad discretion and will not be disturbed absent a clear showing of abuse, as well as a showing of specific prejudice. State v. Randle, 98-1670, p. 8 (La. App. 4 Cir. 12/22/99), 750 So.2d 353, 358. The Louisiana Supreme Court has held that the refusal to grant a continuance for unprepared counsel warrants reversal of the defendant's conviction

where the record supports the argument that counsel was unprepared. State v. Laugand, 99-1327 (La. 3/17/00), 759 So.2d 34.

The defendant argues that his ability to defend himself was "significantly hampered," and that, because the victim's age was placed on the indictment, it "was certainly reasonable" to assume that the State was proceeding under La. R.S. 14:42(A)(4). That statutory provision applies only where the victim is <u>under</u> the age of twelve. The face of the bill of indictment lists the date of the offense, September 15, 1994, as well as the victim's date of birth, July 22, 1982. Based on those dates, the victim clearly was <u>over</u> the age of twelve on the date of the offense, and it would have been unreasonable for defense counsel to have assumed the prosecution was based on La. R.S. 14:42(A)(4).

The defendant does not suggest how he was prejudiced by the State's late filing of the bill of particulars, but simply makes the conclusory allegation that his ability to defend himself was "significantly hampered." The defendant's only witness was the victim's mother, who was simply questioned as to the defendant's purported absence from her residence after the crimes. There is no suggestion that defense counsel would have called additional witnesses had the bill of particulars been furnished to her earlier. Defense counsel was aware of the prosecution theory before the start of trial, and it would have been a simple matter to cross examine the victim in detail regarding any threats of great bodily harm by the defendant, his size, etc., but defense counsel did not do so. The victim testified that the defendant covered her mouth and choked her. The record does not reflect that counsel's performance was due to the State's late filing of the bill of particulars. Significantly, the defendant made no argument in his first assignment of error as to the sufficiency of the evidence relative to whether the victim had been prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. Considering these factors, it cannot be said that the trial court abused its discretion in denying defense counsel's motion for continuance, or even that the defendant was prejudiced by the denial.

There is no merit to this assignment of error.[14]

To the extent that petitioner is asking this Court to consider whether the state courts misapplied state law in failing to quash the indictment or to grant a continuance, the Court cannot

---

[14]  State v. Forman, No. 99-KA-2172, at pp. 9-11 (emphasis in original); State Rec., Vol. I of III.

oblige.  Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law.  Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998).

To the extent that petitioner is arguing that his federal constitutional rights were violated by the state court's refusal, his claim has no merit for the following reasons.

Regarding the failure to quash the indictment, the sufficiency of a state indictment is not a matter for federal *habeas* relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction.  McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam).  The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state indictment is fatally defective only when there are no circumstances under which there could be a valid conviction based on that indictment, and that "determination can be made *only* by looking to the law of the state."  Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).  Where, as here, the state courts have found that the indictment was sufficient under state law, "a federal court need not address that issue."  McKay, 12 F.3d at 68.[15]

---

[15]  In any event, the Court notes that it is evident that the indictment was valid.  Louisiana law provides that an "indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  La.C.Cr.P. art. 464.  Louisiana law expressly provides for the use of a "short form" indictment for charges of aggravated rape and requires only that the statement of charge include the following minimal allegations:  "[the defendant] committed aggravated rape upon [the victim]."  La.C.Cr.P. art. 465(A)(39).  The indictment in the instant case clearly complied with Louisiana law, in that it stated:  "RAYMOND FORMAN ... committed AGGRAVATED RAPE upon [L.R.], date of birth July 22, 1982."  The fact that the indictment included surplusage, i.e. the victim's date of birth, in no way affected the validity of the indictment.  La.C.Cr.P. art. 465(B) ("The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged.  If this is done it shall not affect the sufficiency of the specific indictment form

As to the denial of motion for a continuance, "[w]hen a denial of a continuance is the basis for a habeas petition, the petitioner must show an abuse of discretion that was so arbitrary and fundamentally unfair as to violate the constitutional principles of due process." Newton v. Dretke, 371 F.3d 250, 255 (5th Cir. 2004) (citations omitted). The United States Supreme Court has held: "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied*." Ungar v. Sarafite, 376 U.S. 575, 589 (1964) (emphasis added). Further, the United States Fifth Circuit Court of Appeals has noted:

> If abuse of discretion is demonstrated, the petitioner must sustain the burden common to due process claims that there is a reasonable probability that the verdict might have been different had the trial been properly conducted; as applied to the alleged failing, that there is a reasonable probability that the granting of a

---

authorized by this article.") The United States Fifth Circuit Court of Appeals has upheld the constitutionality of such "short form" indictments. Liner, 731 F.2d at 1203-04.

This Court further notes that, scattered throughout the application and supporting memorandum, petitioner includes various allegations that there were other technical defects in the indictment. However, even if such errors were found to exist, it would be of no moment. As noted above, the sufficiency of an indictment is determined under state law. The Louisiana Supreme Court has noted that clerical errors and technical deficiencies do not render an indictment invalid:

> This Court has consistently held that the alleged deficiencies in the Bill of Information or Indictment cannot be raised for the first time after conviction where in fact the defendant has been fairly informed of the charge against him, where the indictment does in fact charge a crime, when the defendant may be protected against further prosecution by the double jeopardy provision, and when he has not been prejudiced by surprise or lack of notice.

State v. Anderson, 332 So.2d 452, 455 (La. 1976); see also State v. James, 305 So.2d 514, 516-17 (La. 1974). Those minimal requirements were obviously met in the instant case.

- 19 -

> continuance would have permitted him to adduce evidence that would
> have altered the verdict.

Schrader v. Whitley, 904 F.2d 282, 288 (5th Cir. 1990) (footnotes and internal quotation marks omitted).

In the instant case, defense counsel filed a motion for a bill of particulars in which she specifically requested that the prosecution "[s]pecify which section, part, paragraph or division of the statute on which this prosecution is based."[16]  When she did not receive a prompt response to that motion, she supposedly simply assumed that the prosecution was proceeding under La.Rev.Stat.Ann. § 14:42(A)(4) and prepared the defense based on that assumption.  The day before trial, the prosecution finally responded to the motion and noted that it was proceeding under La.Rev.Stat.Ann. § 14:42(A)(2).[17]  On the day of trial, defense counsel then argued that she should be granted a continuance because, due to her incorrect assumption, she had not prepared a defense for a charge under § 14:42(A)(2).[18]

Under those facts, it is clear that the trial judge's denial of the continuance was not so arbitrary and fundamentally unfair as to violate due process.  As noted by the Louisiana Fourth Circuit Court of Appeal, defense counsel's purported assumption that the prosecution was proceeding under § 14:42(A)(4) was completely unreasonable because, from the very face of the indictment, it was evident that subsection *could not* apply in this case.  Further, in any event,

---

[16]  State Rec., Vol. I of III, Motion for Bill of Particulars.

[17]  State Rec., Vol. I of III, Answer to Motion for Bill of Particulars.

[18]  State Rec., Vol. I of III, transcript of January 7 and 21, 1999, pp. 3-4.

petitioner has not shown that there is a reasonable probability that the verdict might have been different in this case if a continuance had been granted.  There is no indication that additional evidence could have been produced at a later  trial and, as the Court of Appeal noted, counsel had sufficient time and opportunity to prepare for the cross-examination of the existing witnesses.  There is simply no basis for finding that anything would have been done differently by defense counsel if the trial had been delayed and, therefore, it is only reasonable to assume that the verdict would have been the same.

In summary, petitioner has not demonstrated that the state court's decision rejecting his claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, in light of the AEDPA's deferential standard, this Court likewise rejects the claims.

<u>Sufficiency of the Evidence</u>

Petitioner next claims that there was insufficient evidence to support his conviction. The United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in habeas proceedings, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

<u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Jackson</u>, 443 U.S. at 319).  "The <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence

determination, but rather whether it made a *rational decision* to convict or acquit.'"  <u>Santellan</u>, 271

F.3d at 193 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)) (emphasis added).

A sufficiency of the evidence argument presents a mixed question of law and fact.

<u>Taylor v. Day</u>, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213

F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court decision rejecting such

a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1).

Petitioner's claim that the evidence was insufficient to support his conviction was

raised on direct appeal and rejected by the Louisiana Fourth Circuit Court of Appeal, which held:

> This Court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in <u>State v. Ragas</u>, 98-0011 (La. App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
>
>> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>State v. Green</u>, 588 So.2d 757 (La.App. 4 Cir. 1991).  However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.  <u>State v. Mussall</u>, 523 So.2d 1305 (La. 1988).  The reviewing court must consider the record as a whole since that is what a rational trier of fact would do.  If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted.

> The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. <u>Mussall</u>; <u>Green</u>; *supra*. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." <u>State v. Smith</u>, 600 So.2d 1319 (La. 1992) at 1324.
>
> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. <u>State v. Shapiro</u>, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from <u>Jackson v. Virginia</u>, *supra*, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. <u>State v. Wright</u>, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. <u>State v. Jacobs</u>, 504 So.2d 817 (La. 1987).

98-0011 at pp. 13-14, 744 So.2d at 106-107, quoting <u>State v. Egana</u>, 97-0318, pp. 5-6 (La. App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.

The defendant was convicted of aggravated rape, a violation of La. R.S. 14:42, which provides in pertinent part:

> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. ...[FN]

- 23 -

> [FN]  The State informed defendant on the day before trial that it was proceeding under this theory.

The defendant claims the evidence was insufficient to sustain the conviction because the victim, who was twelve years old at the time of the alleged offense, was the only witness to identify the defendant as the perpetrator, and no physical evidence linked him to the crime.  The defendant's argument is limited to the sufficiency of the evidence as to the element of the crime that the defendant had vaginal sexual intercourse with his daughter on September 15, 1994.  He makes no argument at all regarding the issue of consent, i.e., whether the victim was prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.

"If credible, the testimony of a single witness may establish the elements of a crime beyond a reasonable doubt."  State v. Womack-Grey, 99-0416, p. 17 (La. App. 4 Cir. 5/17/00), 764 So.2d 108.  Accord State v. Jones, 97-2591, p. 7 (La. App. 4 Cir. 9/8/99), 744 So.2d 165, 169, writ denied, 99-3141 (La. 4/7/00), 759 So.2d 91 (in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion).  A factfinder's credibility decision should not be disturbed unless it is clearly contrary to the evidence.  State v. Harris, 99-3147, p. 6 (La. App. 4 Cir. 5/31/00), 765 So.2d 432.

The testimony of L.R. was internally consistent, and did not conflict at all with the physical evidence.  The victim's physical examination, performed within twelve hours of all three alleged rapes, revealed injuries to her hymen, vagina, and cervix.  The evidence established that these injuries could have occurred from trauma by sexual penetration, although the hematoma in the cervix could have resulted from a cause other than intercourse.  The injuries were consistent with the history given by the victim.  The victim testified that she had taken a bath after the first two rapes, and her mother confirmed that she had seen her daughter drawing bath water.  The evidence established that a bath could account for the lack of any spermatozoa or semen on or in the victim, or on her clothes.  The victim testified that the third and final rape was interrupted by visitors to the residence.  The victim's mother confirmed that these visitors were present when she returned home.  The defendant also

had lived "off and on" with the victim and her mother, but after the
rapes left for work, never to return.
   Viewing all of the evidence in light most favorable to the
prosecution, any rational trier of fact could have found beyond a
reasonable doubt that the defendant had vaginal sexual intercourse
with his daughter on September 15, 1994.
   There is no merit to this assignment of error.[19]

For the reasons noted by the state court, any rational trier of fact, after viewing the

evidence in the light most favorable to the prosecution, could have found that the evidence was

sufficient to convict petitioner of the crime charged.  Petitioner clearly has not demonstrated that the

state court's decision rejecting his claim challenging the sufficiency of the evidence was contrary

to, or involved an unreasonable application of, clearly established federal law, as determined by the

Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this

Court likewise rejects that claim.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus*

relief filed by Raymond Forman be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation contained in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from

---

[19] <u>State v. Forman</u>, No. 99-KA-2172, at pp. 6-8; State Rec., Vol. I of III.

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this eighth day of February, 2008.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**